**Supreme Court**

No. 2011-180-Appeal.
(WC 00-343)

Rhode Island Mobile Sportfishermen, Inc.　　　:

v.　　　　　　　　　　:

Nope's Island Conservation Association,　　　:
Inc.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rhode Island Mobile Sportfishermen, Inc.　　:

v.　　　　　　　　　:

Nope's Island Conservation Association,　　:
Inc.

Present:  Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**　The southern coast of Rhode Island, including beachfront areas of Charlestown and Westerly, can be spectacular places of beauty and tranquility.  Unfortunately, relations among the people who love those places, even among those who endeavor to preserve them in their pristine condition, are not always so tranquil.  The defendant, Nope's Island Conservation Association (defendant or NICA), appeals from a judgment of the Superior Court that recognized a prescriptive easement over property that it owns in Charlestown, Rhode Island.  After a bench trial, the trial justice found that the easement runs from a pathway, commonly known locally as the "sand trail," over the defendant's land, to assessor's plat No. 1, lot No. 82 (lot No. 82), which is owned by the plaintiff, Rhode Island Mobile Sportfishermen, Inc. (plaintiff or RIMS).  On appeal before this Court, the defendant argues (1) that the plaintiff was barred by G.L. 1956 § 34-7-9[1] from claiming a prescriptive easement over this land because it was held for conservation purposes, (2) that the "relation-

---

[1] General Laws 1956 § 34-7-9 says that "[a]ny land held or preserved by a nonprofit corporation or nonprofit association for purposes of conservation, open space, or a cemetery is not subject to adverse possession or prescription."

- 1 -

back" doctrine founded in Rule 15 of the Superior Court Rules of Civil Procedure does not protect the plaintiff from the strictures of this statute, and (3) that even if the plaintiff was not barred from bringing such a claim, it nonetheless failed to prove the elements for a prescriptive easement by the requisite proof. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court and remand this case to that tribunal for further proceedings consistent with this opinion.

# I

## Facts and Travel

The defendant is a nonprofit conservation corporation that owns beachfront property on Quonochontaug Beach (the beach) in Westerly and Charlestown. The beach is located on a peninsula that is situated between the Atlantic Ocean to its south and Quonochontaug Pond (the pond) to its north.[2] The defendant owns all the beachfront property on the southern side of the peninsula in Charlestown. The plaintiff owns lot No. 82, which is on the northern side of that same peninsula and is situated between the pond to its north and defendant's land (lot No. 81) to its south. In the past, but at times that are relevant to this appeal, a shallow, saltwater creek ran through the southern portion of lot No. 82, between the sand trail and the northern portion of the lot. As a result of ocean storms and the changing geography of oceanfront land, the creek has since filled due to "wash over."

The sand trail provides the only land access to the peninsula; it runs directly across defendant's property from west to east. However, the sand trail does not abut lot No. 82 and, as a result, there is a strip of land of varying width, ranging from ten to forty feet, between lot No. 82 and the sand trail. Therefore, to get to lot No. 82 from the sand trail, plaintiff's members

---

[2] A map of the peninsula is attached to this opinion.

must travel over a small segment of lot No. 81.  It is plaintiff's right to travel over that small

piece of land that is disputed in this case.[3]

## A

## Background and Travel

In 1929, Colby and Annette Crandall purchased lot No. 82, and their son, John Crandall,

acquired the property by inheritance in 1983.  Then, in 1999, John Crandall conveyed lot No. 82

to plaintiff.[4]  The defendant, on the other hand, acquired lot No. 81 in 1952.[5]

On June 4, 2000, perhaps aware of increasing activity on and around its property, NICA

sent a notice of intention to dispute plaintiff's right to travel over its land in accordance with §

34-7-6.[6]  In response to that notice, plaintiff filed a complaint in the Superior Court, on July 20,

---

[3] At present, NICA permits beachgoers to walk on and across its property.  It does not, however, allow motor vehicles to be parked on the sand trail.  Therefore, for plaintiff's members to get to and use lot No. 82, in the absence of an easement, it would be necessary for them to walk two miles across the peninsula, to be driven by someone else to their land, or to get access to the lot by boat.

[4] The plaintiff also owns assessor's plat No. 1, lot No. 75 (lot No. 75), which is farther east on the peninsula.  As the owner of lot No. 75, plaintiff has the right to travel the sand trail over lot No. 81.

[5] Lot No. 81 was acquired in 1952 by Nope's Island Association, Inc., described by defendant as its "predecessor."  It appears that defendant retained title to the property when it was incorporated in its present form in 1991.

[6] Section 34-7-6 provides:

> "Whenever the legal owner of any lands anticipates that any other person or persons may obtain the title to those lands, or any way, easement or privilege therein, by possession under the provisions of this chapter, he or she may give notice in writing to the person claiming or using the lands, way, easement, or privilege, of his or her intention to dispute any right arising from that claim or use; and the notice, served and recorded as hereinafter provided, shall be deemed an interruption of the use and prevent the acquiring of any right thereto by the continuance of the use for any length of time thereafter. The notice, signed by the owner of the lands, his guardian or agent, may be served by any disinterested person, making return under oath, on the party so claiming or using the property, his or her agent or guardian, if within this state,

2000, based on § 34-7-7,[7] in which it sought the court's recognition of its right to traverse NICA's land to get access to its own property. Approximately ten years later, and after only minimal discovery had been conducted, RIMS amended its complaint, detailing in the amended complaint the manner in which the Crandall family had satisfied each element of an easement by prescription.[8] RIMS further asserted in the amended complaint that, by virtue of G.L. 1956 § 34-11-28,[9] the right to cross over lot No. 81 passed to RIMS when it acquired lot No. 82 by deed from John Crandall.

In its answer to plaintiff's amended complaint, NICA raised three defenses. First, it maintained that RIMS was estopped from claiming an easement by prescription because it had "sworn under oath that its right of access to Lot [No.] 82 is based solely on its deed." Second, NICA asserted that plaintiff was unable to prove that all the elements necessary to establish a prescriptive easement had been satisfied. Finally, NICA contended that plaintiff was precluded

---

otherwise, on the tenant or occupant, if there be any; and the notice, with the return thereon, shall be recorded within three (3) months thereafter in the records of land evidence in the town in which the land is situated, and a copy of the record, certified by the recording officer to be a true copy of the record of the notice, and the return thereon, shall be evidence of the notice and of the service of the same."

[7] Section 34-7-7 provides:

"Whenever notice is given to prevent the acquisition of lands or way, privilege or other easement, the notice shall be considered so far a disturbance of the right or claim as to enable the party claiming to bring an action for disturbing the same, in order to try the right; and if the plaintiff in the suit prevails, he or she shall recover full costs."

[8] RIMS later amended its complaint a second time to add a paragraph concerning its alleged right to park vehicles on lot No. 81. However, the trial justice never ruled on this issue, instead finding that plaintiff only had the right to cross lot No. 81, and plaintiff did not raise the issue before this Court. Therefore, we shall not address it.

[9] General Laws 1956 § 34-11-28 says that "[i]n any conveyance of real estate all rights, privileges, and appurtenances belonging or appertaining to the granted estate shall be included in the conveyance, unless a different intention shall clearly appear in the deed, and it shall be unnecessary to enumerate or mention them either generally or specifically."

- 4 -

from bringing a prescriptive easement claim because its land was held for conservation purposes, thus triggering the provisions of § 34-7-9. The case was tried before a justice of the Superior Court, sitting without a jury, in 2010.[10]

**B**

**Trial**

At trial, John Crandall testified for plaintiff about his use, and his family's use, of lot No. 82, and their travel over lot No. 81. He testified that he began using his family's property, lot No. 82, in the early 1930s. This use included swimming, clamming, hunting and trapping animals, and cutting sea grass to use as bedding for livestock on the family farm. John Crandall said that he remembered driving to the lot via the sand trail with his father. He also testified that they normally would park their vehicle on the south side of the sand trail and then walk north to their property, but that occasionally they would drive directly onto their lot when the creek either was dried up or low enough to pass over with a truck.

John Crandall's son, Steven Crandall, also testified on behalf of plaintiff. He said that he began using lot No. 82 in the early 1970s. He also testified that he had visited lot No. 82 with his father and that they generally parked on the south side of the sand trail and walked north, across defendant's land, to their property. Steven Crandall, forty-two at the time of trial, also said that he began driving directly onto lot No. 82 when he was about sixteen or eighteen years old. He later testified at trial that he began driving onto the lot in the late 1980s and that getting access to "lot [No.] 82 in this way [was] a continuous thing." However, it is significant that, in a pretrial deposition, Steven Crandall asserted that he began driving onto the lot after there was a wash over of the creek, which he believed was in the mid-1990s. On cross-examination at trial, when

---

[10] We are unable to discern any valid reason why the case consumed more than ten years before it was tried. We are now deciding this appeal some thirteen years after the complaint was filed.

questioned about his deposition answer, he said that he was unsure exactly when he began driving onto the lot, but later maintained that it was in the late 1980s. He testified that he drove onto the lot "many times."[11]

## C

### Decision

After the testimony at trial had concluded, the trial justice issued a written decision in which he found that plaintiff had established an easement over defendant's property. In his findings, the trial justice noted that the Crandall family had used lot No. 82 "for quahogging, bathing, duck hunting and trapping," as well as a yearly clambake in the 1990s. He also said that the Crandalls had "accessed their property, by foot and vehicle, by leaving the sand trail and walking over the Nope's beachfront for many decades." The trial justice observed that "[u]sually, the Crandalls' use of the property was not noticeable, given the tranquility of the area through most of the year"; however, "[t]here were some exceptions, such as the yearly clambake."

The trial justice also found that "[t]he Crandall family was never told that they could not drive to their property from the sand trail," and "[t]hey did so, openly, for over 70 years." He then went on to say that they "drove onto the property occasionally, depending on the condition of the creek," and that "[t]hey were not told to limit their vehicular use, or any other use during these decades."

The trial justice made these findings based on the testimony of the witnesses at trial. It is noteworthy that when he assessed the credibility of those witnesses, he found that John Crandall was "thoughtful, earnest and helpful to the [c]ourt," and that his testimony was "highly credible,

---

[11] Several other witnesses testified at the trial, including land surveyors and current and former members of RIMS and NICA.

consistent and responsive." However, that was not the case with respect to Steven Crandall's testimony; the trial justice found that that testimony was "dedicated to the RIMS case," and that he was "evasive and vague" during part of his testimony, and "inconsistent" about when he could, and actually did, get access to lot No. 82. The trial justice did find the remainder of his testimony to be "fairly credible."

After making his credibility determinations and findings of fact, the trial justice concluded that "the Crandall family accessed their property, by foot and vehicle, by leaving the sand trail and walking over the Nope's beachfront for many decades," and that "[t]his use was actual, open, and continuous." Furthermore, he found that the Crandalls believed they had the right to travel over lot No. 81 and that they did so in a manner inconsistent with the rights of the true owners. Therefore, he found that the Crandalls' use of the property was hostile and under a claim of right. The trial justice found that each of these elements had been proven "clearly, convincingly and with satisfactory evidence."

In his decision, the trial justice also observed that in Rhode Island one cannot establish a prescriptive easement by foot traffic alone.[12] However, he reiterated that "[t]he Crandalls drove trucks and other vehicles to their lot." Finally, the trial justice held that § 34-7-9 did not bar plaintiff from asserting its claim for a prescriptive easement. He reasoned that the statute was not enacted until after 2007, and by that time, plaintiff's right to use the property had vested in it because of the use of plaintiff's predecessor in title. Therefore, he reasoned that the General Assembly's enactment of the statute did not divest plaintiff of a right that it already had acquired.

---

[12] In his decision, the trial justice cited Anthony v. Searle, 681 A.2d 892, 898 (R.I. 1996) (quoting Gammons v. Caswell, 447 A.2d 361, 368 (R.I. 1982)), in which this Court held that, to acquire property by adverse possession, a claimant must use "the land in a more significant fashion than merely walking across it." We note that this holding is codified in § 34-7-4, which provides that "[n]o right of footway, except claimed in connection with a right to pass with carriages, shall be acquired by prescription or adverse use for any length of time."

- 7 -

Accordingly, the trial justice found that plaintiff held an easement to get access to its own property by traveling over defendant's property.

The trial justice then went on to define and limit the easement. He first determined that the easement would run from the sand trail, across defendant's property, and to lot No. 82. He then ruled that the easement would be for foot and vehicular traffic and that it would be wide enough for one vehicle to pass through at a time. However, the number of vehicles that may pass was to remain unlimited. Finally, his decision allowed NICA to choose the precise location of the easement over its property, and further permitted it to change that location once per year. Judgment was entered on March 9, 2011, and defendant timely appealed to this Court.

## II

## Standard of Review

"This Court gives great weight to the factual findings of a trial justice sitting without a jury in a civil matter, and we will not disturb such findings unless they are 'clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" Cahill v. Morrow, 11 A.3d 82, 86 (R.I. 2011) (quoting Costa v. Silva, 996 A.2d 607, 611 (R.I. 2010)). Also, "it is permissible for the trial justice to 'draw inferences from the testimony of witnesses, and such inferences, if reasonable, are entitled on review to the same weight as other factual determinations.'" Id. (quoting DeSimone Electric, Inc. v. CMG, Inc., 901 A.2d 613, 621 (R.I. 2006)). However, we review questions of law and statutory interpretation de novo. Id.; see also Reynolds v. Town of Jamestown, 45 A.3d 537, 541 (R.I. 2012) (citing Waterman v. Caprio, 983 A.2d 841, 844 (R.I. 2009)).

## Discussion

The defendant advances two reasons why it believes the trial justice erred when he decided that the requirements for a prescriptive easement over its property had been met. First, defendant argues that plaintiff was precluded from claiming a prescriptive easement by the express provisions in § 34-7-9 and that the relation-back doctrine does not save plaintiff from the limits set forth in that statute. Second, defendant contends that even if plaintiff was not barred from bringing such a claim, it nonetheless failed to satisfy the elements of a prescriptive easement. Finally, defendant requests that this Court adopt a "higher standard" for proving a claim for adverse possession or a prescriptive easement against an owner of conservation or open land and that we should make use of that standard in our analysis of this case. We shall address each of these issues in turn.

### A

### Section 34-7-9 and the Relation-Back Doctrine

Section 34-7-9 provides that "[a]ny land held or preserved by a nonprofit corporation or nonprofit association for purposes of conservation, open space, or a cemetery is not subject to adverse possession or prescription." The defendant argues that this statute serves as a bar to plaintiff from claiming an easement by prescription over its land, which is held for conservation purposes. The plaintiff responds by arguing that § 34-7-9 was not enacted until 2008 and, therefore, it did not serve to bar the claim in this case, because its claim was raised in the complaint that was filed in 2000. We agree with plaintiff.

"[T]his Court presumes that statutes and their amendments operate prospectively" absent "clear, strong language or a necessary implication that the General Assembly intended to give

the statute retroactive effect." <u>Direct Action for Rights & Equality v. Gannon</u>, 819 A.2d 651, 658 (R.I. 2003). We can discern no indication from the Legislature that § 34-7-9 was intended to apply retrospectively. To the contrary, the Legislature indicated that the "act would take effect upon passage." P.L. 2008, ch. 63, § 2; P.L. 2008, ch. 67, § 2. As a result, the statute must be applied prospectively, and, therefore, it did not preclude plaintiff from asserting an easement by prescription in 2000. <u>See</u>, <u>e.g.</u>, <u>Kaveny v. Town of Cumberland Zoning Board of Review</u>, 875 A.2d 1, 4 (R.I. 2005) (holding that a statute is to be applied prospectively when the Legislature indicated that the "act shall take effect upon passage," quoting P.L. 2004, ch. 3, § 2; P.L. 2004, ch. 4, § 2).

Arguing in the alternative, defendant contends that even if § 34-7-9 applies prospectively, it nevertheless precluded plaintiff from bringing its prescriptive-easement claim because plaintiff's initial complaint, filed in 2000, contained no mention of a prescriptive easement.[13] The defendant maintains that plaintiff's prescriptive-easement claim was not raised until it filed an amended complaint in 2010, well after § 34-7-9 took effect. Furthermore, defendant contends that the prescriptive-easement claim lodged in the amended complaint does not "relate back" to the date of the initial complaint under Rule 15(c), because the claim "sets forth new facts as well as a new legal theory."

Rule 8(a) of the Superior Court Rules of Civil Procedure requires that "[a] pleading which sets forth a claim for relief, * * * shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." This Court has held that "[a] pleading need not include 'the ultimate facts that

---

[13] The defendant contends that the initial complaint set forth only a right of access to lot No. 82 by deed. However, our review reveals that nowhere in that complaint does plaintiff make such an assertion.

must be proven in order to succeed on the complaint * * * [or] to set out the precise legal theory upon which his or her claim is based.'" Gardner v. Baird, 871 A.2d 949, 953 (R.I. 2005) (quoting Haley v. Town of Lincoln, 611 A.2d 845, 848 (R.I. 1992)).  Rather, "[t]he pleading simply must provide the opposing party with 'fair and adequate notice of the type of claim being asserted.'" Id. (quoting Haley, 611 A.2d at 848).

The plaintiff's initial complaint alleged that defendant "ha[d] sent notice to [p]laintiff RIMS pursuant to R.I.G.L. §34-7-6 disputing any right claimed by RIMS to pass and re-pass over its (Nope's Island) real estate to gain access to real estate owned by RIMS."  The complaint went on to say: "Pursuant to RIGL §34-7-7 RIMS now brings this action in order to try the right, which right Nope's Island is attempting to disturb, that is the right of RIMS members to gain access to its property over land claimed by Nope's Island to be its (Nope's Island's) property."

Although the precise words "prescriptive easement" were not set forth in the complaint, it is nonetheless our opinion that the initial complaint provided defendant with "fair and adequate notice" that plaintiff was asserting that it held an easement by prescription. Gardner, 871 A.2d at 953 (quoting Haley, 611 A.2d at 848).  First, it is patently obvious that the complaint was filed in response to defendant's notice of intent to interrupt adverse possession.  Second, the stated purpose of the complaint was to bring an action "to try the right, * * * of RIMS members to gain access to its property over [NICA's] property."  Black's Law Dictionary 585-86 (9th ed. 2009) defines the word "easement" as "[a]n interest in land owned by another person, consisting in the right to use or control the land * * * for a specific limited purpose (such as to cross it for access to a public road)."  When comparing this definition to the language in the complaint, it is difficult to conclude that plaintiff could have been asserting any type of claim other than for an easement by prescription.

Accordingly, we hold that plaintiff satisfied the requirements of Rule 8(a) by putting defendant on sufficient notice that it was asserting that it held a prescriptive easement. That claim was brought in 2000, before § 34-7-9 was enacted. Thus, the statute did not preclude plaintiff from bringing such a claim. And, because plaintiff's first complaint sufficiently pleaded a claim for an easement by prescription, it is not necessary for us to decide whether the amended complaint relates back to the date of the initial complaint.[14]

**B**

**Sufficiency of the Evidence**

The defendant's second argument is that plaintiff failed to demonstrate that the elements of a prescriptive easement were satisfied. "We have long recognized that 'one who claims an easement by prescription has the burden of establishing actual, open, notorious, hostile and continuous use under a claim of right for ten years as required by * * * § 34-7-1.'"[15] Reitsma v.

---

[14] The defendant also contends that plaintiff is estopped from claiming a prescriptive right of access because plaintiff made "an affirmative representation of [the] material fact" that it had a right of access by deed and that defendant reasonably relied on that fact to its disadvantage. However, as stated above, nowhere in the original complaint does plaintiff assert a right of access by deed. The only place in the entire record in which plaintiff refers to access by deed is in its answer to defendant's interrogatory number five. In our opinion, no reasonable person would have relied on this single answer to an interrogatory when determining plaintiff's theory of the case, especially when the complaint clearly asserted a different theory. Therefore, we see no merit in defendant's estoppel argument.

In a footnote, defendant also argues that plaintiff has waived its right to claim an easement by prescription because it failed to assert that one existed in its initial complaint. However, as we have said above, plaintiff did sufficiently assert a claim for a prescriptive easement in its initial complaint, and therefore, this argument also misses the mark.

[15] Section 34-7-1 provides, in pertinent part:

"Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be

Pascoag Reservoir & Dam, LLC, 774 A.2d 826, 831 (R.I. 2001) (quoting Burke-Tarr Co. v. Ferland Corp., 724 A.2d 1014, 1020 (R.I. 1999)). However, before addressing defendant's argument that plaintiff failed to satisfy the requisite elements, we first will address its argument about the appropriate standard of proof to be used in this case.

## 1

### The Appropriate Standard of Proof

The defendant suggests that this Court should adopt a heightened standard of proof because the property at issue is both open space and preserved for conservation. The defendant cites six cases from other jurisdictions that would support a new standard that it proposes is appropriate here. Indeed, defendant suggests that § 34-7-9, which precludes a claim of adverse possession or prescription against the owners of land held for conservation or open space, represents "the logical extension of the policy expressed in these cases." Although arguably § 34-7-9 will render this issue moot in any future case, we, nonetheless, will address the question here because, as discussed above, plaintiff's claim was brought before that statute was enacted.

In no case from this jurisdiction have we applied the heightened standard of proof for which defendant argues. Furthermore, we never have suggested that such a standard would be appropriate. Rather, we have consistently held that a claimant in an adverse-possession or prescription case must prove each element by clear and convincing evidence. See Cahill, 11 A.3d at 88 ("The party who asserts that adverse possession has occurred must establish the required elements by strict proof, that is, proof by clear and convincing evidence." quoting Corrigan v. Nanian, 950 A.2d 1179, 1179 (R.I. 2008) (mem.)); Hilley v. Lawrence, 972 A.2d 643, 652 (R.I.

allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto * * *."

2009) ("The claimant must prove each element by clear and satisfactory evidence."). We see no reason to depart from our well settled case law—and, therefore, decline defendant's invitation to adopt a new standard in this case—and we shall apply the standard of clear and convincing evidence as we have in the past.[16]

**2**

**Sufficiency of the Evidence**

Applying the clear-and-convincing standard to the trial justice's factual findings, as well as to the record before us, we are not satisfied that sufficient evidence was produced that would justify a conclusion that a prescriptive easement was established. Specifically, the record does not clearly demonstrate that the Crandalls continuously got access to lot No. 82 by vehicle for the statutorily required ten-year period.

In his decision, the trial justice stated that "[b]y allowing the use of pedestrian traffic but restricting the use of vehicular traffic, [NICA] is parsing terms." He went on to say that "[n]either the case law nor the statute (R.I.G.L. § 34-7-1 regarding adverse possession) appears to distinguish between different modes of use of the easement by prescription." In our opinion, this is a misstatement of the law.

Section 34-7-4, provides that "[n]o right of footway, except claimed in connection with a right to pass with carriages, shall be acquired by prescription or adverse use for any length of time." In applying that section, this Court has stated: "It is clear that even 'long-continued use

---

[16] "Clear and convincing evidence is defined in a variety of ways; for example, to establish a fact or an element by clear and convincing evidence a party must persuade the jury that the proposition is highly probable, or must produce in the mind of the factfinder a firm belief or conviction that the allegations in question are true. The clear and convincing evidence standard does not require that the evidence negate all reasonable doubt or that the evidence must be uncontroverted." Cahill v. Morrow, 11 A.3d 82, 88 n.7 (R.I. 2011) (quoting 29 Am. Jur. 2d Evidence § 173 at 188-89 (2008)).

by footpassers over the [way] * * * cannot establish an easement * * *.'" <u>Palisades Sales Corp. v. Walsh</u>, 459 A.2d 933, 937 n.8 (R.I. 1983) (quoting <u>Daniels v. Blake</u>, 81 R.I. 103, 108, 99 A.2d 7, 10 (1953)). Thus, it is evident that "actual, open, notorious, hostile and continuous" vehicular use is required to establish an easement by prescription. <u>Reitsma</u>, 774 A.2d at 831 (quoting <u>Burke-Tarr Co.</u>, 724 A.2d at 1020). In our opinion, the trial justice erred when he conflated the pedestrian and vehicular use, and it is necessary for the trial justice to separate his findings of fact concerning which method of travel the Crandalls used when crossing lot No. 81. In short, he must distinguish between pedestrian and vehicular use.[17]

In his decision, the trial justice found that "[t]he Crandall family was never told that they could not drive to their property from the sand trail," and "[t]hey did so, openly, for over 70 years." He then went on to say that they "drove onto the property occasionally, depending on the condition of the creek." He found that "[u]ntil the 1980s the Crandalls accessed the lot less than ten times per year"; however, the frequency of trips across lot No. 81 <u>by</u> <u>vehicle</u> remains unclear.

Furthermore, the trial justice concluded that the Crandalls "accessed their property, by foot and vehicle, by leaving the sand trail and walking over the Nope's beachfront for many decades," and that "[t]his use was actual, open, and continuous." However, because the trial justice conflated the Crandalls' pedestrian use with their vehicular use, we simply cannot glean sufficient evidence from the record to support his conclusion that the Crandalls crossed from the sand trail to lot No. 82 in a continuous manner by vehicle.

---

[17] Because defendant currently has a policy that allows people to walk on its property, it argues that we need not address whether plaintiff has the prescriptive right to walk across its land to get access to lot No. 82. However, this issue must be addressed because defendant could, at any time, change this policy to prohibit people from walking on its land. Yet, in doing so, we must remain cognizant of § 34-7-4.

The trial justice also did not specify when he believed the prescriptive easement vested. Instead, he said only that "[b]y [2008], the Crandalls had * * * acquired their rights in the easement." Therefore, it is difficult for us to determine from the record whether or not the elements of § 34-7-1 have been satisfied for the requisite ten-year period.

Based on our review of the record, we are left to speculate about any span of time when all elements might have been satisfied. The testimony centered on two periods when this may have occurred. The first was when John Crandall and his father crossed lot No. 81 in a truck to get to lot No. 82, which appears from the record to have occurred in the 1930s and 1940s. The second was when Steven Crandall said he sometimes drove across defendant's lot to get to lot No. 82, which ran from the late 1980s to 1999, at which time the lot was conveyed to RIMS. These are the only two periods about which the record contains evidence of the Crandalls crossing from the sand trail to lot No. 82 by vehicle. However, as to each, there is insufficient evidence in the record, as it now stands, to demonstrate continuous vehicular use by clear and convincing evidence.

John Crandall's testimony concerning vehicular use is minimal and he was asked only two questions about such use. The first exchange occurred on direct examination and is as follows:

"Q    Now did there come a time when you drove directly on to [lot No. 82]?
"A    At times we did. Like I say, sometimes you go down there and there's a foot of water and then again you'd have two inches of water then it would be dry. So, you never knew what you were going to face when you got there. You know, you either get the dry bed there or drive in there or else you could park on the other side or whatever, you know."

The second exchange, which took place on cross-examination, occurred as follows:

"Q    Did you ever directly drive a vehicle on to lot [No.] 82?

- 16 -

"* * *

"A    Yes, on occasion we did, yes.

"Q    When?

"A    When we - - when we, I personally didn't drive it but my father
       did.  In other words, we went down and got that marsh hay. We
       tried to catch it when that creek was dry so we could just back off
       on to that lot.

"Q    Was it - - you never personally ever drove a vehicle on to the lot,
       and as I understand you – the only time you were in a vehicle that
       went on to [lot No. 82] was when you were with your father?

"A    That is right."

That evidence is insufficient to establish continuous vehicular use of the land in question for the requisite ten-year period, especially under the clear-and-convincing standard.

The second era in which the Crandalls may have satisfied all the elements of a prescriptive easement occurred in the late 1980s to 1999, when Steven Crandall used lot No. 82. He testified that he began driving onto the lot in the late 1980s, that he did so "many times," and that getting access to "lot [No.] 82 in this way [was] a continuous thing."  However, in Steven Crandall's deposition, he previously had testified that he began driving onto the lot after there was a wash over, which, he believed, occurred in the mid-1990s.  If this is to be believed, his testimony failed to establish vehicular use of the land for the statutory ten-year period, because his family no longer owned lot No. 82 after 1999, thus failing to satisfy the ten-year statutory requirement.

When cross-examined about his previous deposition answer, Steven Crandall said that he was unsure exactly when he began driving onto the lot, but he later maintained that it was in the late 1980s.  It is significant, however, that the trial justice found his testimony to be less than credible because it was "dedicated to the RIMS case" and that he was "evasive and vague" during part of his testimony, and "inconsistent" about when he could, and actually did, get to lot No. 82 by vehicle.  Additionally, the trial justice found the remainder of his testimony to be only

"fairly credible." Because of the inconsistencies in Steven Crandall's testimony and the trial justice's assessment that his credibility was less than stellar, continuous vehicular use has not been established by clear and convincing evidence for this period either.

The lack of clarity in the findings of fact, as they currently appear, does not justify the conclusion that a prescriptive easement was established by clear and convincing evidence. In our opinion, to determine whether an easement was created, there must be additional and more specific findings of fact. The trial justice must determine whether the Crandalls used vehicles to cross from the sand trail to lot No. 82, continuously for at least ten years. See Reitsma, 774 A.2d at 831. In doing so, the trial justice should make specific findings of fact, including, if possible, the frequency of the vehicular use, the number of times vehicles were used, and in what years they were used.

## IV

### Conclusion

For the foregoing reasons, we vacate the judgment and remand this case to the Superior Court for proceedings consistent with this opinion. On remand, the Superior Court shall permit the parties to supplement the existing record by offering any additional testimony or other evidence that may assist the fact-finder in resolving the issue presented. The Superior Court then shall issue an amended decision and judgment that is not inconsistent with this opinion.

Justice Robinson did not participate.




**TITLE OF CASE:**     Rhode Island Mobile Sportfishermen, Inc. v. Nope's Island Conservation Association, Inc.

**CASE NO:**     No. 2011-180-Appeal.
(WC 00-343)

**COURT:**     Supreme Court

**DATE OPINION FILED:**     January 31, 2013

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, and Indeglia, JJ.

**WRITTEN BY:**     Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**     Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Jeffrey A. Lanphear

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Justin T. Shay, Esq.

For Defendant:  Deming E. Sherman, Esq.