February 5, 2018

Stephanie Flynn et al.      :

v.      :

Nickerson Community Center et al.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Stephanie Flynn et al.                  :

            v.                          :

Nickerson Community Center et al.       :


Present:  Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   The plaintiffs, Stephanie Flynn and Louis Silva,

individually and in their capacity as co-administrators of the Estate of Alexis Silva (Alexis), and

Stephanie Flynn (Flynn) and Dennis Coelho, individually and as parents, natural guardians, and

next friends of Nevaeha Coelho[1] (Nevaeha) (collectively plaintiffs), appeal from the Providence

County Superior Court hearing justice's grant of summary judgment in favor of the defendant,

Nickerson Community Center (Nickerson or defendant).  This appeal arises from a tragically

fatal car accident in Providence caused by a juvenile after he stole a van from Nickerson's

premises.  The plaintiffs subsequently brought a negligence action against Nickerson.  After a

summary judgment hearing, the hearing justice granted the defendant's motion on the grounds

that the defendant did not owe a duty to the plaintiffs.  On appeal, the plaintiffs argue that

genuine issues of material fact remain in dispute, and therefore the hearing justice erred in

concluding that the defendant did not owe a duty to the plaintiffs.  For the reasons set forth in

this opinion, we affirm the judgment of the Superior Court.

---

[1] We will refer to Alexis Silva and Nevaeha Coelho by their first names to avoid any confusion.

1

# I

## Facts and Travel

On September 25, 2010, a fourteen-year-old boy stole a red transport van—emblazoned with "Nickerson Community Center" on its side—and took it for a joyride, hitting a car on Manton Avenue in Providence and fleeing the scene in the vehicle. Next, attempting to evade police, the juvenile sped onto Route 10 heading southbound, by way of Westminster Street. The juvenile drove faster, headed toward Union Avenue, striking a black Honda. The van then crossed over into the northbound side of the expressway, colliding with a silver Nissan.

Flynn was driving the silver Nissan, and three passengers were in the car, including her two minor daughters, Nevaeha and Alexis. After the vehicle was hit by the red van, Alexis sustained fatal injuries, and Flynn and Nevaeha were transported to the hospital with severe injuries.

Later that day, Providence police officers responded to a report of a breaking and entering at Nickerson, which is a nonprofit organization located in the Olneyville section of Providence. The organization provides social services to residents in the area, including day care, after-school programs, and services for veterans; the building also houses a food pantry and clothing donation center. At the time of the break-in, Nickerson was closed for the weekend.

When the police officers arrived at the property, a Nickerson employee, Kingray Rojas, met them. Rojas told the police that a rear window screen had been broken and an individual had entered the building. Rojas stated that the person had gone into an office and rummaged through a cabinet that had been left open. Additionally, Rojas told police, the thief had taken the keys to the van that were stored on a hook on a closet door and had stolen the van, later

2

identified as the red van involved in the Route 10 accident. The juvenile was subsequently charged in the Family Court.

On September 18, 2013, plaintiffs filed a complaint alleging negligence in Providence County Superior Court against Nickerson and Aetna Bridge Company.[2] The plaintiffs contended that Nickerson owed a duty of care to them and that it breached its duty by failing to secure the van's keys. Nickerson filed a third-party complaint against the juvenile for indemnity.

On July 9, 2015, Nickerson filed a motion for summary judgment, arguing that it did not owe a duty to plaintiffs because it did not have a special relationship either with plaintiffs or with the juvenile who stole the van and caused the accident. In support of its motion, Nickerson submitted, *inter alia*, an affidavit from Lisa D'Ambra, the then-President of Nickerson's Board of Directors and acting Executive Director at the time of the 2010 incident. In the affidavit, D'Ambra stated that Nickerson had been closed during the September break-in and that the juvenile had gained access to the building by breaking a window screen and "forc[ing] open a window." The affidavit also described Nickerson employees' observations of the building after the break-in as "ransacked" in areas. Further, D'Ambra attested to the fact that the van keys were always kept in a closet in Nickerson's reception area when they were not being used. She also stated that no Nickerson-owned vehicle had ever been stolen prior to this incident.[3]

In response, plaintiffs submitted their opposition to Nickerson's motion for summary judgment, supporting it with various exhibits, including two conflicting statements from the juvenile: one statement that he had made to a Rhode Island State Police detective shortly after the accident, and one statement that he had made to a Department of Children, Youth and

_____

[2] The plaintiffs dismissed all claims against Aetna Bridge Company on May 28, 2014.
[3] The plaintiffs provided evidence that at least one vehicle owned by other individuals had been stolen from Nickerson's premises prior to the accident.

3

Families (DCYF) social worker more than a month after the accident, neither of which was a sworn statement. In his interview with the detective, the juvenile said that an unidentified Nickerson employee had told him where the van keys were located inside the building. Then, when the juvenile was assessed by the social worker as part of a court evaluation, he contended that he had seen the keys in the van's ignition, prompting him to steal it.

The plaintiffs also attached to their objection numerous police reports evidencing unrelated criminal activity at the Nickerson property. The plaintiffs argued that this documentation of rampant crime, particularly break-ins at Nickerson and reports of vehicles broken into and stolen from Nickerson's premises gave Nickerson notice that the theft of the van and subsequent fatal motor vehicle accident were possible. Additionally, plaintiffs submitted that the deposition of Mario Cabral, a Nickerson employee for sixteen years, revealed that, prior to this incident, Nickerson vans had been vandalized, including broken windows and stolen license plates.

Furthermore, plaintiffs provided evidence of Nickerson's security protocols in an attempt to demonstrate that, had those policies been followed, there would have been no way for the juvenile to access the keys. For example, in a witness statement to police, Betty Ann Palmisciano, a board member at Nickerson, explained that the van keys were stored in the reception area of the building in "a closet with a lock box."[4] In her deposition, D'Ambra also described this policy, stating that the reception area itself was also locked at the end of the night, in an effort to prevent the keys from ending up with the wrong person.

On February 23, 2016, the hearing justice heard arguments on defendant's motion for summary judgment, and he ultimately granted the motion. The hearing justice highlighted the

---

[4] However, Mario Cabral testified at his deposition that the keys were kept inside a locked closet, but he added that there was "not a lockbox" inside the closet.

4

parties' different versions of events that purportedly occurred on the day of the accident. The defendant, the hearing justice acknowledged, maintained that the building was locked on the day in question and that the juvenile broke in and stole the van keys from a closet located in an "employee's [*sic*] only" area. Then, defendant averred, the juvenile used those keys to access the van parked in the parking lot, and he drove the van off the premises.

The plaintiffs countered defendant's rendition of the events, asserting that there were at least three plausible scenarios[5] that might have occurred before the juvenile caused the accident on Route 10. The three scenarios are as follows: (1) a Nickerson employee informed the juvenile where he could find the keys, which is what the juvenile told police after the accident; (2) Nickerson could have failed to follow its security protocols in the building, which would have allowed the juvenile easier access to the keys inside the building; or (3) a Nickerson employee could have left the keys in the van's ignition.

Initially, the hearing justice recognized that a motion for summary judgment can only be based on admissible evidence. He first focused on determining whether defendant owed a legal duty to plaintiffs. The hearing justice concluded that there was no special relationship between Nickerson and plaintiffs or between Nickerson and the juvenile.[6] The hearing justice also determined that there was no evidence that the keys were made available to the juvenile.

However, even assuming that the keys had been left in the van's ignition, the hearing justice declined to expand the current duty that vehicle owners owe to the public, absent this Court's extension of existing case law or the adoption of new legislation. Accordingly, the

---

[5] The plaintiffs once again advance these three possible scenarios on appeal.
[6] The hearing justice noted that the only evidence of any connection between Nickerson and the juvenile were the two statements by the juvenile after the theft. He determined that those two contradictory statements were inadmissible hearsay and not proper for consideration in deciding a motion for summary judgment.

hearing justice ruled that, because there was no relationship between Nickerson and the juvenile, Nickerson had no duty to control the juvenile's actions, and the theft "was an unforeseeable independent cause of [p]laintiff[s'] harm." Consequently, the hearing justice granted Nickerson's motion for summary judgment.

The plaintiffs timely appealed to this Court.

## II

## Issues on Appeal

On appeal, plaintiffs first contend that there are a number of genuine issues of material fact that must be resolved by a jury. The plaintiffs posit three factual scenarios that arguably could have been catalysts for the van theft, and they argue that there are factual issues as to whether Nickerson violated its security policies and whether one of its employees informed the juvenile of the keys' location. Additionally, plaintiffs maintain that the juvenile stated at one point that the keys were in the van's ignition when he stole it. Therefore, plaintiffs urge this Court to adopt a test used in some other jurisdictions that imposes a duty on defendants who leave their keys in their vehicle's ignition, eventually resulting in an accident, when other factors are at issue, such as location in a high-crime area.

The defendant counters that only one of the three factual scenarios proposed by plaintiffs is supported by admissible evidence: that the juvenile broke into Nickerson's building through a back window, stole the van keys from inside a closet, and then stole the red van. Alternatively, defendant avers that, even if this Court considers plaintiffs' other factual scenarios, Rhode Island law does not support the existence of a legal duty in those situations. Furthermore, defendant argues that Rhode Island's negligence case law does not support the adoption of the "special circumstances" test used by other jurisdictions and promoted by plaintiffs in this appeal.

6

Additionally, defendant contends that, even if there were a duty, there is no evidence that Nickerson proximately caused plaintiffs' injuries.

## III

## Standard of Review

"In reviewing the granting of a motion for summary judgment, this Court engages in a *de novo* review, 'apply[ing] the same standards and rules as did the motion justice.'" *Danforth v. More*, 129 A.3d 63, 68 (R.I. 2016) (quoting *Narragansett Indian Tribe v. State*, 81 A.3d 1106, 1109 (R.I. 2014)). Although "summary judgment is a drastic remedy, it is nevertheless appropriate when, 'viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" *DePasquale v. Cwiek*, 129 A.3d 72, 75 (R.I. 2016) (quoting *Pichardo v. Stevens*, 55 A.3d 762, 765 (R.I. 2012)). Generally, "claims sounding in negligence are appropriately resolved through a trial, but summary adjudication is proper when the 'facts suggest only one reasonable inference.'" *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013) (quoting *DeMaio v. Ciccone*, 59 A.3d 125, 130 (R.I. 2013)). "[W]e will not hesitate to affirm a grant of summary judgment if the nonmoving party fails to make a showing sufficient to establish the existence of an element *essential* to that party's case * * *." *Behroozi v. Kirshenbaum*, 128 A.3d 869, 872 (R.I. 2016) (quoting *Laplante v. Rhode Island Hospital*, 110 A.3d 261, 264 (R.I. 2015)).

# IV

## Discussion

### A

### Evidence Admissible on Summary Judgment

Before we reach the duty analysis in this case, we must first consider whether the evidence presented by plaintiffs is admissible on summary judgment. The plaintiffs contend that the juvenile's statement to the DCYF social worker is admissible evidence and thus should have been considered by the hearing justice in ruling on the motion for summary judgment. The plaintiffs also argue that the juvenile's statement to the detective that a Nickerson employee told him where to find the keys is admissible evidence and should also have been considered.

A party must submit "competent evidence" in order "to defeat a motion for summary judgment." *Mruk v. Mortgage Electronic Registration Systems, Inc.*, 82 A.3d 527, 532 (R.I. 2013) (upholding a grant of summary judgment in favor of the defendants on the grounds that the plaintiff's arguments were "largely 'barren of particularized factual support and fail[ed] to set forth any specific facts that would be admissible in evidence'" (quoting *Harold W. Merrill Post No. 16 American Legion v. Heirs-at-Law, Next-of-Kin and Devisees of Smith*, 116 R.I. 646, 648, 360 A.2d 110, 112 (1976))); *see also Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc.*, 45 A.3d 571, 574 (R.I. 2012) (noting that, at the summary judgment stage, the court reviews the "admissible evidence"). Moreover, in an attempt to survive summary judgment, a party may not rely on inadmissible hearsay. *See Nichola v. Fiat Motor Co., Inc.*, 463 A.2d 511, 513-14 (R.I. 1983) (holding that statements in an affidavit that "amounted to little more than hearsay * * * should not have been considered" on a motion for summary judgment). If "the facts suggest only one reasonable inference, the trial justice may

properly treat the question as a matter of law." *Shelter Harbor Conservation Society, Inc. v. Rogers*, 21 A.3d 337, 344-45 (R.I. 2011) (quoting *Shappy v. Downcity Capital Partners, Ltd.*, 973 A.2d 40, 45 (R.I. 2009)).

The plaintiffs posit three reasons why the juvenile's two conflicting statements should be admitted.[7] In doing so, they point to three rules: Rules 804(b)(3), 801(d)(2)(A), and 801(d)(1)(A) of the Rhode Island Rules of Evidence. We believe both the statement to the social worker and the statement to the detective are too conjectural to be considered in a summary judgment analysis. First, in order for the "[s]tatement against interest" hearsay exception to apply pursuant to Rule 804(b)(3),[8] the declarant must be unavailable. There is no evidence that

---

[7] In addition to the three arguments which apply to both statements, plaintiffs also argue that the statement to the social worker is admissible under the "public records and reports" exception to the hearsay rule outlined in Rule 803(8) of the Rhode Island Rules of Evidence, which provides, in relevant part:

> "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel * * *."

The language in Rule 803(8) "substantially tracks the language of its federal counterpart," Rule 803(8) of the Federal Rules of Evidence, and so we turn to federal case law for guidance. *State v. Traficante*, 636 A.2d 692, 695 (R.I. 1994).

Here, the social worker's report contains a summary of what the juvenile told the social worker, making the statement double hearsay; and, accordingly, this exception does not apply. *See United States v. Mackey*, 117 F.3d 24, 28 (1st Cir. 1997) ("[H]earsay statements by third persons * * * are not admissible under this exception merely because they appear within public records."); *see also Goodman v. Kimbrough*, 718 F.3d 1325, 1333 n.2 (11th Cir. 2013) (noting that, even if conclusions in a report are admissible, "the statements of third-parties within that report are double hearsay not within any exception to the rule").

[8] Rule 804(b)(3) provides, in pertinent part, as follows:

> "A statement which * * * at the time of its making * * * so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have

9

the juvenile was unavailable in the present case. Consequently, this exception does not apply.

Second, to be considered nonhearsay under Rule 801(d)(2)(A), a statement must be "the party's own statement" and "offered against a party." Further, Rule 801(d)(2)(A) does not apply to statements of a party that are "not offered against" that party. *See State v. Chum*, 54 A.3d 455, 463 (R.I. 2012). Here, the statements were not offered against the juvenile as an adverse party because plaintiffs sought to introduce them against Nickerson rather than against the juvenile. Even though the juvenile is a third-party defendant in the action, he is not adverse to plaintiffs for purposes of their claims against Nickerson. *See id.*

Finally, plaintiffs aver that the statements may be admitted at trial pursuant to Rule 801(d)(1)(A).[9] However, neither statement is "competent evidence," *Leone v. Mortgage Electronic Registration Systems*, 101 A.3d 869, 872 (R.I. 2014) (quoting *Daniels v. Fluette*, 64 A.3d 302, 304 (R.I. 2013)), which is generally presented on summary judgment in the form of "pleadings, depositions, answers to interrogatories, * * * admissions on file, * * * [and] affidavits * * *." *Id.* at 874 (quoting *Swain v. Estate of Tyre ex rel. Reilly*, 57 A.3d 283, 288 (R.I. 2012)).

The plaintiffs did not document the statement to the social worker or the statement to the detective in any way that is sufficient at a hearing on summary judgment. They provided no

---

made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

[9] Rule 801(d)(1) provides, in relevant part, that "[a] statement is not hearsay if * * * [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony[.]"

depositions from the social worker, the detective, or the juvenile,[10] nor were any affidavits presented to the court. Furthermore, plaintiffs failed to ask for a further continuance of the hearing on defendant's motion for summary judgment on the grounds that they had not yet deposed the juvenile. *See Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 276 (R.I. 2009) (noting that Rule 56(f) of the Superior Court Rules of Civil Procedure requires the party opposing summary judgment to "file affidavits stating why he or she cannot present facts in opposition to the motion" (quoting *Rhode Island Depositors' Economic Protection Corp. v. Insurance Premium Financing, Inc.*, 705 A.2d 990, 990 (R.I. 1997) (mem.))). Thus, the hearing justice properly declined to consider both statements at summary judgment.

## B

### Duty

We now address plaintiffs' only remaining factual scenario. The plaintiffs contend that Nickerson may have failed to follow its security protocols, which would have allowed the juvenile easier access to the van keys inside the building. To establish a negligence claim, a plaintiff must demonstrate "a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Wells v. Smith*, 102 A.3d 650, 653 (R.I. 2014) (quoting *Brown v. Stanley*, 84 A.3d 1157, 1161-62 (R.I. 2014)). Moreover, to survive summary judgment, a plaintiff must show that he or she is owed a legal duty by the defendant before the three other elements of his or her negligence claim will be considered. *Gushlaw v. Milner*, 42 A.3d 1245, 1252 (R.I. 2012).

---

[10] The plaintiffs submit that they attempted to depose the juvenile prior to the hearing on summary judgment and issued a subpoena to that effect. DCYF filed a motion to quash the subpoena, contending that the juvenile was not fit for a deposition; the motion was rendered moot once summary judgment was granted.

11

The determination of "[w]hether a defendant is under a legal duty in a given case is a question of law." *Brown*, 84 A.3d at 1162 (quoting *Willis v. Omar*, 954 A.2d 126, 129 (R.I. 2008)).

Yet, the jury may still play a role in the duty analysis if there is a need "to determine the existence of those predicate facts that trigger the presence of the legal duty." *Kuzniar v. Keach*, 709 A.2d 1050, 1056 (R.I. 1998). Where there is no duty, a factfinder will have "nothing to consider and a motion for summary judgment must be granted." *Phelps v. Hebert*, 93 A.3d 942, 946 (R.I. 2014) (quoting *Gushlaw*, 42 A.3d at 1252).

We do not have a "set formula for finding [a] legal duty," and thus "such a determination must be made on a case-by-case basis." *Wells*, 102 A.3d at 653 (quoting *Willis*, 954 A.2d at 130). Consequently, we engage in "an *ad hoc* approach that turns on the particular facts and circumstances of a given case[.]" *Gushlaw*, 42 A.3d at 1256 (quoting *Ouch v. Khea*, 963 A.2d 630, 633 (R.I. 2009)). In *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I. 1987), we adopted the following list of factors to consider when deciding whether to impose a duty:

> "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." *See also Woodruff v. Gitlow*, 91 A.3d 805, 815 (R.I. 2014).

In addition, "[t]he 'relationship between the parties' * * * [is also a consideration] in our duty analysis." *Gushlaw*, 42 A.3d at 1257 (quoting *Selwyn v. Ward*, 879 A.2d 882, 887 (R.I. 2005)).

1

**Rhode Island Case Law**

Ordinarily in Rhode Island, no legal duty exists "to control a third party's conduct to prevent harm to another individual." *Santana v. Rainbow Cleaners, Inc.*, 969 A.2d 653, 658

12

(R.I. 2009). However, we have carved out an exception in circumstances where "a defendant has a special relationship with either the person whose conduct needs to be controlled or with the intended victim of the conduct." *Id.*

For example, in *Volpe v. Gallagher*, 821 A.2d 699 (R.I. 2003), we determined that the defendant, who was both the landowner and the mother of a mentally-ill son who murdered a neighbor with a firearm, owed "a duty to exercise reasonable care so to control the conduct of [her son] as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them[.]" *Id.* at 702, 709 (quoting Restatement (Second) *Torts* § 318 at 126-27 (1965), entitled "Duty of Possessor of Land or Chattels to Control Conduct of Licensee"). There, the defendant's son kept guns and ammunition in the basement of defendant's house. *Id.* at 708. We held that a jury could reasonably conclude that the defendant either "knew or had reason to know that she had the ability to control her son with respect" to the storage of such weapons on her property. *Id.* at 707.

Additionally, in *Martin v. Marciano*, 871 A.2d 911, 913, 914 (R.I. 2005), we held that one of the defendants, who hosted a party where alcohol was available to underage attendees, owed a duty to an attendee who was assaulted with a baseball bat by another partygoer. We acknowledged that ordinarily landowners do not have a duty "to protect [others] from harm caused by the dangerous or illegal acts of a third party[,]" but recognized an exception where a special relationship exists between parties "who provide intoxicants and those whom they serve." *Id.* at 915. We held that the defendant-host, by providing alcohol to underage guests, owed a duty "to take reasonable steps to protect * * * guests from injury[,]" reasoning that such a holding was in accordance with a public policy against underage drinking, as evidenced by various statutes aimed at addressing the issue. *Id.* at 916. Furthermore, we concluded that, in the

13

context of that case, it was "generally foreseeable that one of * * * [the] underage guests could have been the victim of an attack" at the party, given the defendant-host's expectation of a large turnout and the reality "that the use of intoxicants frequently unduly excites the tempers, emotions and actions of those who indulge in them." *Id.* at 917 (quoting *Fisher v. Robbins*, 319 P.2d 116, 126 (Wyo. 1957)).

In contrast, in *Ouch*, 963 A.2d at 631-32, we were faced with deciding whether a defendant-driver owed a duty to his passengers where the passengers were hit by gunfire aimed at the defendant's vehicle by rival gang members. There, considering the duty-triggering factors, we declined to recognize any special relationship between the defendant-driver, who was a gang member, and the third-party rival gang members responsible for the shooting. *Id.* at 634. We also concluded that the gun violence was neither foreseeable nor related to the defendant-driver's operation of the vehicle. *Id.* ("[The] defendant had no control over the murderous conduct of the gunman; nor are we convinced that he could have predicted the events of that evening.").

Moreover, in *Santana*, 969 A.2d at 666, we determined that the defendant-mental health center did not have a duty to control its mental health patient who attacked a dry-cleaning employee with a crowbar. We reasoned that, in the absence of evidence supporting the patient's need for involuntary commitment, the defendant did not owe a duty to the plaintiff to prevent the attack by certifying him to "an appropriate facility[,]" because imposing such a duty would contravene the statutory preference to treat patients in the least restrictive manner. *Id.* at 661, 666-67 ("If we imposed a duty in this case, * * * then mental health professionals, faced with a choice between initiating certification proceedings and potential liability, certainly would feel pressure to choose the former option.").

14

In *Gushlaw*, 42, A.3d at 1247, 1249, we also declined to impose a duty on an underage drinker to prevent his intoxicated friend whom he transported to the friend's vehicle from subsequently driving and injuring a third party. There, the plaintiff's husband was killed when his vehicle was hit by an intoxicated person, who had been dropped off at his car by the defendant. *Id.* at 1248-49. The defendant knew his friend was drunk when he left him at his vehicle. *Id.* at 1248. We held that there was no special relationship between the parties because the defendant had neither served the underage driver alcohol, nor had the driver consumed alcohol on the defendant's premises. *Id.* at 1257. We concluded that the defendant did not have control over the driver's conduct that caused the plaintiff's harm. *Id.*

## 2

### Special Relationship

We first examine whether Nickerson owed any duty on the basis of a purported special relationship between Nickerson and either the juvenile or plaintiffs. When property owners

> "allow one or more persons to use their land or personal property, they are, if present, under a conditional duty to exercise reasonable care to control the conduct of such users to prevent them from intentionally harming others or from conducting themselves on the possessors' property in a manner that would create an unreasonable risk of bodily harm to others." *Volpe*, 821 A.2d at 706 (citing Restatement (Second) *Torts*, § 318 at 126-27).

It is important to note, however, that, in order for a duty to exist, landowners must "know or have reason to know that they have the ability to control the person(s) using their land," and, also "know or should know of the necessity and opportunity for exercising such control." *Id.*

The juvenile in the present matter was trespassing on defendant's property during a weekend when the facility was closed. The plaintiffs seem to suggest that Nickerson's duty arises based on its identity as a landowner. However, here, Nickerson never gave the juvenile

15

permission to enter the building, nor were any Nickerson employees present at the time of the theft, nor was there anything to demonstrate that the juvenile was known to defendant. *See Santana*, 969 A.2d at 665-66 (declining to recognize any special relationship where the plaintiff had failed to provide evidence of her attacker's mental health condition at the time of his last appointment at the defendant-mental health center approximately *four months* before he attacked the plaintiff). As such, under a premises liability theory, Nickerson could not be held liable for any actions of the juvenile who broke into its closed facility because, generally, landowners owe no duty to trespassers. *But see Volpe*, 821 A.2d at 706 (noting that a special relationship "may arise between the possessor of land and those allowed on the land because of the possessor's power of control over those allowed to enter" (quoting *Chavez v. Torres*, 991 P.2d 1, 5 (N.M. Ct. App. 1999))).

The plaintiffs suggest that defendant's proposition that the juvenile broke into the facility is impossible unless Nickerson breached its security policies. Even if Nickerson violated all of its own security rules by failing to properly secure its premises or to lock the closet where the van keys were kept, we cannot extend a duty based on premises liability. While a break-in very well may have been foreseeable if a Nickerson employee left the building unlocked, it is much less foreseeable, if it is at all, that a thief would break into the building, steal the van keys, steal the van, then drive the van negligently, resulting in harm to plaintiffs driving on a nearby highway. We decline to recognize a duty because it would amount to imposing a duty of care on victims of illegal entries to unknown plaintiffs.

16

**3**

***Banks* Factors**

**a**

**Foreseeability**

Absent a special relationship between Nickerson and the juvenile or plaintiffs, we consider a number of other factors in determining whether to impose a duty on defendant. To start, foreseeability is "[t]he linchpin in the analysis of whether a duty flows from a defendant to a plaintiff * * *." *Selwyn*, 879 A.2d at 887. We have explained the need to "limit[] the scope of a defendant's duty according to risks he or she reasonably perceived," and we have expressed "that a duty must be based on conduct 'sufficiently likely to result in the kind of harm' suffered by the plaintiff * * *." *Id.* (quoting *Volpe*, 821 A.2d at 705). Similarly, "in order to temper foreseeability * * * an adequate nexus must exist between the foreseeability of [the plaintiff's] harm and the actions of the defendant." *Id.* (quoting *Marchetti v. Parsons*, 638 A.2d 1047, 1051 (R.I. 1994)). However, "foreseeability of injury does not, in and of itself, give rise to a duty." *Gushlaw*, 42 A.3d at 1261 (quoting *Ferreira v. Strack*, 636 A.2d 682, 688 n.4 (R.I. 1994)). Accordingly, we "consider the foreseeability issue in tandem with all factors germane to the duty analysis." *Id.* The foreseeability inquiry "plays a variety of roles in tort doctrine generally; in some contexts it is a question of fact for the jury, whereas in other contexts it is part of the calculus to which a court looks in defining the boundaries of 'duty.'" *Martin*, 871 A.2d at 917 (quoting *Banks*, 522 A.2d at 1226).

As we stated earlier, while it may have been foreseeable that Nickerson might be the victim of a break-in if one of its employees violated the security procedures, it cannot be said that the juvenile's break-in, theft of the keys and the van, and subsequent accident that caused

17

plaintiffs' injuries were a foreseeable sequence of events resulting from Nickerson's failure to lock the building. *See Krier v. Safeway Stores 46, Inc.*, 943 P.2d 405, 407, 415-16 (Wyo. 1997) (declining to impose a duty to a defendant-landlord where a store employee was injured inside the building after a burglar broke in through the roof and stabbed the employee to death because the injury was not foreseeable even though the store had been broken into five times in twenty-two years). Therefore, we hold that the harm in this case—a fatal car accident—was not a foreseeable consequence of a break-in of Nickerson's premises.

The plaintiffs make much of defendant's location in the high-crime area of Olneyville. However, we have never held that a property's location in a high-crime area, in and of itself, is a determinative factor in considering whether an individual owes a duty to another, and we will not do so here. *See Thanadabouth v. Kongmany*, 712 A.2d 879, 879, 880 (R.I. 1998) (mem.) (holding that the defendant-landlord had no duty to tenants to install additional outdoor lighting on premises to protect tenants from third-party criminal conduct, despite the high-crime nature of the neighborhood, while also noting that "there had been no prior criminal activity on the premises concerning either party").

**b**

**Closeness of Connection**

As part of the duty analysis, we look next to the closeness of the connection between Nickerson's purported negligence in violating its security protocols and plaintiffs' injuries. *See Gushlaw*, 42 A.3d at 1256 (listing "the closeness of connection between the defendant's conduct and the injury suffered" as a factor for consideration in the duty analysis (quoting *Ferreira v. Strack*, 652 A.2d 965, 967 (R.I. 1995) (*Ferreira II*))). The juvenile's breaking and entering into Nickerson's facility and subsequent theft of the van was his voluntary decision, allegedly

18

facilitated by Nickerson's purported failure to have adequately secured its property. *See id.* at 1261-62 (finding any closeness of connection minimal where intoxicated driver independently and voluntarily chose to drive his vehicle after being dropped off at the vehicle by the defendant).

Further, in between the accident that caused plaintiffs' injuries and the time of the theft, the juvenile hit a parked car and fled the scene of that crash while evading police, then hit a second car, and finally drove across the median divider into plaintiffs' oncoming car. Moreover, the juvenile's crash with plaintiffs occurred some distance away from Nickerson. As such, the timeline of events in this case distances plaintiffs' injuries from any action of Nickerson. *See id.* at 1262 n.20 (noting that harm was caused to the plaintiff by the drunk driver about one hour after the defendant dropped the intoxicated friend at his car).

### c

### Extent of Burden & Public Policy Concerns

Finally, we turn to the policy considerations in a case such as this. Nickerson contends that, if we were to extend a duty in this instance, it would "open[] the door to victims of theft [being] exposed to an additional loss: that of a civil action from persons who may later be injured by a thief's misuse of their stolen property." We are of the opinion that the burden on the defendant in such cases would be unreasonable because it would require both adequate security on buildings and locking of vehicle keys within a building.

Additionally, "it is not the function of this Court to act as a super legislative body and rewrite or amend statutes already enacted by the General Assembly." *Willis*, 954 A.2d at 132 (quoting *Bandoni v. State*, 715 A.2d 580, 585 (R.I. 1998)). While we recognize the public policy

19

concerns surrounding accidents caused by the thieves of stolen vehicles, it is not our role to "creat[e] * * * new causes of action[,]" and we will not do so here. *Ferreira II*, 652 A.2d at 968,

Further, it is significant to note the dire consequences that could result from an imposition of a duty in this case based solely on the high-crime area in which Nickerson is located. A number of courts have recognized the policy implications in these types of negligence actions. *See, e.g., Kim v. Budget Rent A Car Systems, Inc.*, 15 P.3d 1283, 1287 (Wash. 2001) (explaining that imposing a duty based on a high rate of crime in a location could have the undesired consequence of "the departure of businesses from urban core areas" (quoting *Hutchins v. 1001 Fourth Avenue Associates*, 802 P.2d 1360, 1370 (Wash. 1991) (en banc))). For instance, "[b]usinesses may react by moving from poorer areas where crime rates are often the highest." *Bass v. Gopal, Inc.*, 716 S.E.2d 910, 915 (S.C. 2011) (quoting *McClung v. Delta Square Limited Partnership*, 937 S.W.2d 891, 900 (Tenn. 1996)). As for those businesses that remain, they "may take the elaborate [security] precautions" promoted by those courts that have extended a duty in situations such as the present matter, "and will pass on the added costs to their customers in the form of higher prices[,] * * * thereby increasing the costs of goods and services for the people least able to afford the higher prices." *Delgado v. Trax Bar & Grill*, 113 P.3d 1159, 1181 (Cal. 2005) (Kennard, J., dissenting). These two unappealing options are even more concerning when we consider nonprofit organizations like Nickerson that are needed most in areas that experience high-crime rates. The individuals who currently benefit from Nickerson's services would suffer if Nickerson is either forced to move from the area or is compelled to pass on the added costs in some way, such as terminating some of its current programs.

As such, imposing a duty on defendant here would be akin to imposing a duty on every person who stores car keys in his or her home, fails to effectively secure the house, and is the

20

victim of theft by a criminal who breaks into the dwelling to steal the keys, the car, and then injures a third party in a subsequent motor vehicle accident. We decline to do so.[11]

# V

## Conclusion

While we sympathize with the victims of the horrific event at issue in this case, "[w]e do what we must, for 'it is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law.'" *Roy v. State*, 139 A.3d 480, 482 (R.I. 2016) (quoting *Burnham v. Guardian Life Insurance Co. of America*, 873 F.2d 486, 487 (1st Cir. 1989)). Tragedy alone will not make a defendant liable for purported negligence, "absent a recognized duty of care." *Gushlaw*, 42 A.3d at 1252. Because we hold that there was no duty of care owed by Nickerson in this case, the plaintiffs' negligence claims against Nickerson must fail as a matter of law. The hearing justice's grant of summary judgment was proper.

For the foregoing reasons, the plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed. The papers in the case are remanded to the Superior Court.

Justice Goldberg did not participate.

---

[11] "'[T]he cardinal principle of judicial restraint' is that 'if it is not necessary to decide more, it is necessary not to decide more[.]'" *Tempest v. State*, 141 A.3d 677, 687 n.15 (R.I. 2016) (quoting *PDK Laboratories, Inc. v. Drug Enforcement Administration*, 362 F.3d 786, 799 (C.A.D.C. 2004) (Roberts, J., concurring in part and concurring in judgment)). In recognition of this principle, we decline to address plaintiffs' arguments as to what might have been the result at the summary judgment stage if the hearsay statements had been admissible.

21

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Stephanie Flynn et al. v. Nickerson Community Center et al. |
| **Case Number** | No. 2016-114-Appeal. (PC 13-4669) |
| **Date Opinion Filed** | February 5, 2018 |
| **Justices** | Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Angelo R. Simone, Esq. <br> John E. Sylvia, Esq. <br> Michael St. Pierre, Esq. <br><br> For Defendant: <br><br> Rajaram Suryanarayan, Esq. <br> Kevin N. Rolando, Esq. |