April 16, 2019

**Supreme Court**

No. 2016-320-Appeal.
(NC 13-59)

Raymond Oliver et al.                           :

                    v.                          :

Narragansett Bay Insurance Company et al.   :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Raymond Oliver et al.                    :

v.                                       :

Narragansett Bay Insurance Company et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  This case originates with the tragic death of four-year-old Nicholas Gear, who drowned in a swimming pool owned by his grandmother, Laura Gear (Gear), on May 27, 2012.  His parents, the plaintiffs Raymond Oliver and Tiffany Gear (plaintiffs), appeal from a judgment of the Superior Court granting summary judgment in favor of the defendant, NAMCO, LLC (NAMCO or defendant), the company that sold the swimming pool to Gear.  On appeal, the plaintiffs argue that genuine issues of material fact exist as to whether: (1) NAMCO negligently failed to warn Gear about the safety features of the pool ladder and its locking mechanism; (2) Gear considered the installer to be NAMCO's agent; and (3) NAMCO negligently failed to properly vet and supervise the installers listed on a document given to purchasers of pools.  For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## I

## Facts and Travel[1]

On March 19, 2012, Gear purchased an above-ground swimming pool and accompanying "'Slide & Lock' A-Frame Pool Ladder" from a NAMCO store in Seekonk, Massachusetts.  Gear

---

[1] Although the underlying action includes five defendants, this appeal concerns only one defendant, NAMCO.  Therefore, we recite only those facts relevant to this appeal.

returned to the store on April 4, 2012, to pay the remaining balance on the pool. While she was at the store on that date, Gear inquired as to how to have the pool installed at the property where she resided in Portsmouth, Rhode Island. A NAMCO employee provided Gear with a document entitled "Swimming Pool Installation Information," which listed several pool-installation companies and installation prices based on the size of the pool.[2] On the opposite side of the list of installers, the document read, in part:

> "The attached list of swimming pool installers and their prices is provided for customer convenience. Proper pool installation is important to the long-term enjoyment of your pool and the choice of installer is the customer's right. ***NOTE: YOU ARE UNDER NO OBLIGATION TO USE ANY OF THE INSTALLERS ON THIS LIST AND WE ENCOURAGE YOU TO RESEARCH YOUR DECISION THOROUGHLY.***" (Emphasis in original.)

At her deposition, Gear testified that, after receiving the document, she was under the impression that the installers listed "were subcontractors that worked for themselves, but Namco ha[d] used them. And, I guess, they have a relationship * * * that's the impression I got."

After calling two or three pool installers on the list without success, Gear contacted Lot-2 Enterprises (Lot-2). Gear spoke to Mary Dominique, one of the co-owners of Lot-2, to set up the pool installation.[3] Lot-2 requested that Gear obtain written permission for the installation from

---

[2] It is unclear as to how NAMCO decided to place installers on the list. At her deposition, Andrea Caouette, district manager at NAMCO, testified that the list is assembled at NAMCO's corporate headquarters by the "Installation Manager." However, she could not speak to NAMCO's process for creating the list. John Dominique, co-owner of the pool installer Lot-2 Enterprises, testified that he went to the Seekonk store in 2008 or 2009 to inquire about being placed on the list, and that he gave his name and his company name to an employee at the store. John Dominique further testified that he did not fill out an application; but, five to six months later, he received a call telling him that he would be placed at the bottom of the list. John Dominique had attempted to be placed on the list while working for another company prior to this date, but was unsuccessful.

[3] In the complaint, plaintiffs allege that Lot-2 is co-owned by Mary Dominique and her husband, John Dominique. At his deposition, John Dominique testified that he is the sole owner of Lot-2, and that Mary works at the company as his employee. However, at her deposition, Mary testified that she and John own and operate Lot-2 together.

the owner of the property, Paul Seddon (Seddon), which Gear provided to the company. Additionally, Lot-2 sent Gear a contract for the pool installation in the mail, which was signed on the day of installation.

On May 21, 2012, Lot-2 installed the pool. John Dominique, owner and primary contractor of Lot-2, testified at his deposition that he did not ask Gear to see a building permit prior to the pool installation, but "thought [he] saw [a permit] in the window" of the house. As to the installation process, Gear testified at her deposition that the installers dug an area for the pool, set the pool in the ground, began filling the pool with water, and then instructed Gear to "check [the water] and shut it off at night." Gear testified that she understood that the company installed only the pool itself, and not the ladder or the fencing surrounding the pool. A valid permit to install the pool was never obtained by the installer, Seddon, or Gear. The following day, a friend of Gear's assembled the ladder. Both the swimming pool and the safety ladder were packaged with instructions from the manufacturer.

On May 27, 2012, Nicholas was left in Gear's care. That morning, Gear departed her house to do errands, leaving her then fourteen-year-old daughter to look after Nicholas. While Gear was away from the premises, Nicholas gained access to the pool and drowned.

The plaintiffs filed a complaint in Superior Court on February 1, 2013, which was subsequently amended to include negligence claims against five defendants, including Seddon's insurance companies,[4] NAMCO, and John and Mary Dominique (collectively, defendants). The plaintiffs alleged, in part, that defendants negligently installed or allowed the pool to be installed without proper permitting and in violation of Portsmouth town ordinances, the Rhode Island

---

[4] Seddon was originally named as a defendant, but he died in January 2015, after the commencement of this action. Consequently, his insurance companies, Narragansett Bay Insurance Company and United States Liability Insurance Company, were substituted in his place.

building code, and Rhode Island Department of Health regulations. The plaintiffs further alleged that defendants negligently installed the safety ladder.

On September 3, 2015, NAMCO filed a motion for summary judgment,[5] arguing that, because NAMCO did not install the pool or the ladder, and because Lot-2 was not its agent, NAMCO had no duty to plaintiffs regarding installation of the pool. Furthermore, NAMCO asserted, plaintiffs could not prove that its actions were the proximate cause of Nicholas's death. The plaintiffs filed an objection to NAMCO's motion, arguing that a question of fact existed as to whether Lot-2 acted with apparent or inherent agency authority on behalf of NAMCO.[6] Moreover, plaintiffs contended that NAMCO had "failed in its duty to warn Gear of the dangers of not utilizing the sliding safety lock mechanism and safety padlock system" of the ladder.

A hearing on defendants' motions for summary judgment was held on February 1, 2016. At the hearing, plaintiffs additionally argued that "NAMCO did nothing to vet Lot 2 Enterprises[,]" and further that "NAMCO owns the list that was given and Lot 2 was on the list." The hearing justice commented that plaintiffs were "skating on thin ice when this comes to NAMCO." At the conclusion of the hearing, the hearing justice denied the motions for summary judgment as they related to the four other defendants. The hearing justice stated that he was "really close to granting summary judgment for NAMCO," but he reserved judgment on the motion until a later date. On June 6, 2016, while hearing arguments on unrelated motions, the hearing justice revisited NAMCO's motion for summary judgment. The hearing justice stated that, after reviewing his notes regarding NAMCO's motion for summary judgment, he "thought [he] made a mistake" in not granting the motion in the first instance. Then, with little or no explanation, he granted

---

[5] The other four defendants in the case also filed motions for summary judgment.
[6] The plaintiffs' objection also addressed the other defendants' motions for summary judgment. However, we need not address those arguments here.

NAMCO's motion for summary judgment. Final judgment in favor of NAMCO entered on June 28, 2016, and plaintiff timely appealed.

## II

## Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Cancel v. City of Providence*, 187 A.3d 347, 349 (R.I. 2018) (quoting *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016)). "We will affirm a trial court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* at 350 (brackets omitted) (quoting *Newstone Development, LLC*, 140 A.3d at 103). "Furthermore, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Newstone Development, LLC*, 140 A.3d at 103). "Summary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (brackets and deletion omitted) (quoting *Newstone Development, LLC*, 140 A.3d at 103).

Moreover, "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013) (quoting *DeMaio v. Ciccone*, 59 A.3d 125, 129 (R.I. 2013)). This Court has also "cautioned that 'issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner.'" *DeLong v. Rhode Island Sports Center, Inc.*, 182 A.3d 1129, 1137 (R.I. 2018) (quoting *DeMaio*, 59 A.3d at 130).

# III

## Discussion

On appeal, plaintiffs assert three reasons why summary judgment should not have entered on their negligence claim against NAMCO. First, plaintiffs argue that the hearing justice overlooked the argument that NAMCO had a duty to inform Gear of the safety features of the pool ladder and its locking mechanism. Second, plaintiffs contend that a jury could find that Lot-2 acted as an agent for NAMCO. Lastly, plaintiffs assert that the hearing justice overlooked their argument that NAMCO negligently failed to vet and supervise the installers it placed on the list given to Gear.

## A

## Failure to Warn

First, plaintiffs contend that the hearing justice overlooked their argument that NAMCO "had a duty to explain the safety features of the A-Frame pool ladder * * * to Gear and likewise failed in its duty to warn Gear of the dangers of not using the sliding safety lock mechanism and safety padlock system on the ladder." NAMCO counters that it only had a duty to warn of known dangers and, further, that the written instructions and warnings from the manufacturers of the pool and the ladder were sufficient to meet this standard. Moreover, NAMCO argues that "without evidence to support the position that Laura Gear did not understand the written instructions, no verbal and/or demonstrative instructions are required * * *." Finally, NAMCO contends that plaintiffs cannot prove that its actions were the proximate cause of Nicholas's death.

It is well settled that, "[t]o establish a negligence claim, a plaintiff must demonstrate a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Kemp v.*

*PJC of Rhode Island, Inc.*, 184 A.3d 712, 717 (R.I. 2018) (quoting *Flynn v. Nickerson Community Center*, 177 A.3d 468, 476 (R.I. 2018)).  Furthermore, "for a plaintiff to survive summary judgment on a negligence claim, he or she 'must show that he or she is owed a legal duty by the defendant before the three other elements of his or her negligence claim will be considered.'" *Id.* (quoting *Flynn*, 177 A.3d at 476).  "[W]hether a defendant is under a legal duty in a given case is a question of law." *Brown v. Stanley*, 84 A.3d 1157, 1162 (R.I. 2014) (quoting *Willis v. Omar*, 954 A.2d 126, 129 (R.I. 2008)).  Moreover, in cases relating to products liability, we have held that "[i]n negligence, the defendant only has a duty to warn if he had reason to know about the product's dangerous propensities which caused plaintiff's injuries." *Thomas v. Amway Corporation*, 488 A.2d 716, 722 (R.I. 1985).

We are of the opinion, however, notwithstanding their appellate argument, that plaintiffs' complaint does not state a claim for negligent failure to warn.[7]  "Rule 8(a) of the Superior Court Rules of Civil Procedure requires that 'a pleading which sets forth a claim for relief shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks.'" *Rhode Island Mobile Sportsfishermen, Inc. v. Nope's Island Conservation Association, Inc.*, 59 A.3d 112, 119 (R.I. 2013) (brackets, punctuation, and deletion omitted) (quoting Super. R. Civ. P. 8(a)).  Moreover, "a pleading need not include the ultimate facts that must be proven in order to succeed on the complaint or to set out the precise legal theory upon which his or her claim is based." *Id.* (brackets and deletion omitted) (quoting *Gardner v. Baird*, 871 A.2d 949, 953 (R.I. 2005)).  "Rather, 'the pleading simply

---

[7] We also note that, although NAMCO asserted this argument at oral argument and not specifically in its brief to this Court, it did raise this argument below in its "Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment."  NAMCO argued: "It should be noted that to the extent the Plaintiff's memorandum may sound in products liability, they have not plead [*sic*] products liability and have no expert to support any theory regarding any hidden danger."

must provide the opposing party with fair and adequate notice of the type of claim being asserted.'" *Id.* (brackets omitted) (quoting *Gardner*, 871 A.2d at 953). We further note that this Court has taken a liberal approach to pleadings, "recogniz[ing] the sufficiency of complaints even when the claims asserted within those complaints lack specificity." *Konar v. PFL Life Insurance Company*, 840 A.2d 1115, 1118 (R.I. 2004).

Here, plaintiffs' original complaint, first-amended complaint, and second-amended complaint fail to state any allegation against NAMCO for failure to warn. In fact, all three versions of the complaint are identical with respect to this defendant, and allege negligence by "Defendant NAMCO and/or its authorized agent" only as to the *installation* of the pool. The specific allegations against NAMCO, as articulated in plaintiffs' "Second Amended Complaint," read as follows:

> "40. Defendant NAMCO and/or its authorized agent installed the Pool on the Property without obtaining proper permitting from the Town of Portsmouth;
>
> "41. Defendant NAMCO and/or its authorized agent installed the Pool on the Property in violation of Portsmouth Town Ordinances;
>
> "42. Defendant NAMCO and/or its authorized agent installed the Pool on the Property in violation of the State of Rhode Island Building Code;
>
> "43. Defendant NAMCO and/or its authorized agent installed the Pool on the Property in violation of State of Rhode Island and Department of Health Regulation;
>
> "44. Defendant NAMCO and/or its authorized agent negligently installed a safety ladder for use with and/or on the Pool;
>
> "45. Defendant NAMCO and/or its authorized agent failed to install a proper safety ladder for use with and/or on the Pool;
>
> "46. As a direct and proximate cause of Defendant NAMCO's and/or its authorized agent's actions, inactions and/or negligence

Nicholas N. Gear suffered irreparable pain, suffering, physical injury, and death."

It is clear that the allegations in plaintiffs' complaint are not sufficient to "give 'the opposing party fair and adequate notice'" of a claim for negligent failure to warn. *Konar*, 840 A.2d at 1118 (quoting *Hendrick v. Hendrick*, 755 A.2d 784, 791 (R.I. 2000)). Thus, we decline to address the substantive arguments on this issue.[8]

**B**

**Negligent Installation by NAMCO or its Agent**

Having established that the complaint alleges only a claim for negligence by NAMCO or its authorized agent with respect to the installation of the pool, we turn to whether summary judgment was proper on that theory of liability. The plaintiffs argue that the hearing justice erred in granting summary judgment in favor of NAMCO because a genuine issue of fact exists as to whether the installer acted as NAMCO's agent and this fact cannot be resolved on summary judgment. The plaintiffs contend that "[a] jury could * * * find that Gear reasonably thought that the Lot 2 * * * was a 'subcontractor' of NAMCO; acted as an agent for NAMCO; acted and possessed apparent or inherent agency authority from NAMCO; and that NAMCO consented to have Lot 2 on the List." The plaintiffs further argue that NAMCO had a duty to fully disclose that the installers on the list were not its agents. Conversely, NAMCO avers that it did not have an

---

[8] Additionally, it is unclear from the transcript whether the hearing justice addressed the failure-to-warn issue specifically. Rather, at the February 1, 2016 hearing, following discussion regarding several issues in defendants' motions for summary judgment, the hearing justice stated generally, "[w]ell, if all the defendants have heard this discussion, I think you're skating on thin ice when this comes to NAMCO." Furthermore, at the hearing on unrelated motions on June 6, 2016, the hearing justice granted summary judgment for NAMCO without further discussion on the failure-to-warn issue. Instead, the hearing justice focused on plaintiffs' negligence claim sounding in agency theory.

affirmative duty to disclose that the installers were not its agents and, moreover, that the doctrine of apparent agency is not applicable to the facts of the case at bar.

Apparent authority is defined in the Restatement (Second) of *Agency* § 267 (1958):

> "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

We have further commented that "[a]pparent authority may result in the liability of a principal if the principal held out someone as its agent and reliance upon the principal's actions results in injury to a third party." *Cayer v. Cox Rhode Island Telecom, LLC*, 85 A.3d 1140, 1145-46 n.3 (R.I. 2014). "An agency relationship exists when: (1) the principal manifests that the agent will act for him, (2) the agent accepts the undertaking, and (3) the parties agree that the principal will be in control of the undertaking." *Credit Union Central Falls v. Groff*, 966 A.2d 1262, 1268 (R.I. 2009). Moreover, "the existence of an agency relationship sufficient to allow vicarious liability to attach is an issue of fact." *Pineda v. Chase Bank USA, N.A.*, 186 A.3d 1054, 1057 (R.I. 2018) (brackets and deletion omitted) (quoting *McNulty v. Chip*, 116 A.3d 173, 185 (R.I. 2015)); *see also Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1082 (R.I. 2013) ("We have held that the existence of an agency relationship is a question of fact.").

A review of the record reveals that plaintiffs have met their burden of demonstrating that this threshold factual issue remains in dispute. First, although its process is unclear, placement on the installer list involved recognition by NAMCO's corporate headquarters. Also, Gear testified at her deposition that, when she was handed the document by a NAMCO employee, the employee indicated that the list contained subcontractors who knew how to install NAMCO's pools. Gear further testified that it was her impression that NAMCO had a relationship with the installers on

the list. Furthermore, John Dominique testified at his deposition that NAMCO personnel make several random inspections of the pools that Lot-2 installs each year. After considering these facts in the light most favorable to plaintiffs, we are of the opinion that an issue of fact exists as to whether Lot-2 acted as NAMCO's agent, or whether Gear reasonably believed that Lot-2 was NAMCO's agent. These questions are not amenable to determination by the hearing justice on summary judgment, and should properly be considered by the factfinder. *See DeLong*, 182 A.3d at 1136-37. Thus, we find that the hearing justice erred in granting summary judgment in favor of NAMCO.

## C

### Duty to Vet

Finally, plaintiffs argue that summary judgment was inappropriate because NAMCO had a duty to include only qualified installers on its list and, further, to properly vet and supervise the installers it included on that list; according to plaintiffs, the hearing justice overlooked this argument below. On the other hand, NAMCO asserts that the hearing justice determined that NAMCO did not have a duty to supervise or vet the installers on that list and that he did not err in reaching that conclusion.

We have held that there is no "'set formula for finding a legal duty,' and thus 'such a determination must be made on a case-by-case basis.'" *Flynn*, 177 A.3d at 477 (brackets omitted) (quoting *Wells v. Smith*, 102 A.3d 650, 653 (R.I. 2014)). To find a legal duty, "we engage in 'an *ad hoc* approach that turns on the particular facts and circumstances of a given case.'" *Id.* (brackets omitted) (quoting *Gushlaw v. Milner*, 42 A.3d 1245, 1256 (R.I. 2012)). We consider the following factors, among others, when deciding whether a party has a legal duty:

> "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of

connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I. 1987).

Moreover, "the relationship between the parties is also a consideration in our duty analysis." *Flynn*, 177 A.3d at 477 (brackets and deletion omitted) (quoting *Gushlaw*, 42 A.3d at 1257).

We have also noted that "the jury may still play a role in the duty analysis if there is a need 'to determine the existence of those predicate facts that trigger the presence of the legal duty.'" *Flynn*, 177 A.3d at 476 (quoting *Kuzniar v. Keach*, 709 A.2d 1050, 1056 (R.I. 1998)). Here, in assessing at least two of the factors in the duty analysis—specifically, "the closeness of connection between the defendant's conduct and the injury suffered," *Banks*, 522 A.2d at 1225, and "the relationship between the parties," *Flynn*, 177 A.3d at 477—it is necessary to first determine the consequence of the installer list. However, several material issues of fact remain in dispute regarding the list. Significantly, the parties dispute whether the list may be properly classified as an "approved" list of installers. Additionally, as discussed *supra*, a factual issue remains in dispute with respect to the relationship between NAMCO and the installers on the list, and whether Gear could have reasonably believed that an agency relationship existed. Consequently, we cannot determine whether NAMCO had a duty with respect to the list without first a determination as to these threshold issues of fact.

Moreover, although NAMCO argues that the hearing justice found that it did not owe a duty to supervise or vet, we do not find the hearing justice's reasoning to be so clear. At the hearing during which the hearing justice granted NAMCO's motion for summary judgment, when plaintiffs asserted that NAMCO had a duty to vet the installers placed on the list, the hearing justice responded, "[b]ut they had an obligation if they were concerned about it" and, further, "[o]nce they

- 12 -

got the list and they got the recommendation, they could have said we want to find out who this is." Beyond these statements, however, the hearing justice made no clear finding as to NAMCO's duty with respect to the installation list.

For these reasons, we are of the opinion that this issue may not be resolved on summary judgment.

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment and remand the case to the Superior Court. The record shall be returned to that tribunal.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Raymond Oliver et al. v. Narragansett Bay Insurance Company et al. |
| **Case Number** | No. 2016-320-Appeal. <br> (NC 13-59) |
| **Date Opinion Filed** | April 16, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Walter R. Stone |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Thomas M. Dickinson, Esq. |
| | For Defendants: <br><br> Joseph A. DiMaio, Esq. <br> George M. Trutza, Esq. |